[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff husband was married to the defendant wife on January 2, 1968 at Elkton, Maryland. The wife has resided continuously in the State of Connecticut for at least one year prior to the commencement of this action.
One child was born to the wife during the course of the marriage that is presently a minor, to wit: James David O'Donoghue, born April 23, 1976. The minor child is issue of the marriage. The court will parenthetically note that as of the date of this memorandum the child is approximately two weeks short of reaching his majority age.
The plaintiff is fifty-one (51) years of age and has a degree from Mississippi State University. He is in apparent good health although he did have a heart attack in 1986. He has worked with American National Can for the entire length of the marriage. His present salary is $120,000 per year gross with an annual bonus of approximately $11,000.
The husband testified that in 1986 his company wanted to relocate him in Chicago. After discussing the matter with his wife, he decided to turn down the offer but told the company that he would consider relocating after his daughter graduated from high school. In 1990, he was reapproached and decided to accept the assignment. It was his understanding that his wife would join him when the real estate market improved. In August, 1991, he realized that his wife had no intention of joining him in Chicago. He testified that she told him she wanted CT Page 6665 a divorce. Although he was disappointed, he was not surprised. He did offer to leave his company and come back to Connecticut. His wife would not relent.
The wife is forty-seven (47) years old and appears to be in good health. She obtained her degree in education from the University of Bridgeport during the course of their marriage.
She has worked sporadically during the marriage, primarily as an art instructor and as an artist. In November, 1992, she filed a financial affidavit with this court which showed a gross annual income of $27,600. Her present affidavit indicates an annual gross income from employment of $16,350 and dividend income of $7,500.
During the past year, the wife received $189,000 from her father's estate.
During the course of the trial, it was also revealed that the defendant has additional income from Brookfield Craft Center, which income was not shown on her current affidavit. When questioned about this oversight, she responded that the expenses exceeded the income and for that reason the income was not reported. In spite of this explanation, the court is not convinced that the "expenses exceeded the income." She did not provide the court with information as to the expenses and the court is led to believe that she does derive some net income from this employment.
The defendant has two other potential sources of income: The Eleanor Allen Family Trust "B" and the Eleanor Allen Family Trust "C".
She will receive income from Trust B in the amount of about $10,000 per year for the rest of her life.
She will, in all likelihood, receive money from Trust C. However, since it is uncertain when that trust will be funded and how much she will serve the court, will, for the purposes of this memorandum, attribute no income to her from "C" Trust. If and when she does receive income, said income may be the basis for a modification upon proper application by this plaintiff.
Although the defendant is presently working, it is only three days a week. She attributes this to school budget cuts and indicated that she has sent several resumes to other school districts. She certainly has the potential to earn more than the $16,000 she is presently receiving from her present employment. CT Page 6666
On the basis of the evidence, the court makes the further findings of facts:
1. Neither party has contributed more to the breakdown of the marriage than the other.
2. The marital premises has a fair market value of approximately $140,000.
3. The husband's 401K has a value of $62,000, exclusive of the loan of $40,000 which was used as seed money for the purpose of his condominium.
4. The husband has a defined retirement plan which has a present day value of $151,000.
5. The husband has the use of a company car with attendant expenses all being paid by his company. He also has a $1,200 per month reimbursement expense account with Diners Club.
6. The husband used $10,000 from his IRA to purchase furniture.
7. The wife has approximately $175,000 invested in various accounts. This is her inheritance money received during the marriage but after the separation.
8. The husband's condominium has a fair market value of $195,000 with an equity of $30,000.
Having considered all of the evidence, and further having considered the provision of Connecticut General Statutes, Secs. 46b-81 and 46b-82, the court further orders as follows:
A. The marriage has broken down irretrievably, there is no prospect of any reconciliation and a decree of dissolution may enter.
B. The marital home, with an approximate equity of $80,000, is by judicial decree awarded to the wife. She shall be responsible for the payment of the mortgage, taxes, insurance and all other attendant expenses and shall hold the husband harmless.
C. The husband shall pay to the wife the sum of $450 per week as periodic alimony until the happening of the first of the following events: CT Page 6667
(1) death of either party;
(2) remarriage of the wife;
(3) ten (10) years from the date herein.
The court has seriously considered the issue of time-limited alimony and given the inheritance of the wife, the dissolution of assets and the potential of greater income, it feels that such time limited alimony is justified under these circumstances. Alimony shall be non-modifiable as to term.
D. The husband shall, at his own expense, make available to the wife the present medical insurance policy in force for as long a period of time as is permitted under COBRA.
E. The husband shall maintain, through his employment, a life insurance policy naming his wife as beneficiary to the extent of $200,000 for so long as he is required to pay alimony or is employed with American Can, whatever event first occurs.
F. The husband shall assign, by a Qualified Domestic Relations Order, 20 percent of his pension valued as of the date of this memorandum.
G. Each of the parties shall pay for his or her own counsel fees and costs, and except as otherwise provided, his or her own liabilities.
Mihalakos, J.